United States District Court
Eastern District of Kentucky
Northern Division at Covington

| | |
|---|---|
| UNITED STATES OF AMERICA | ) Covington Criminal |
| | ) Action No. 10-28 |
| vs. | ) |
| | ) Covington, Kentucky |
| VERLIN BRETT BAILEY | ) July 13, 2010 |
| | ) 11:30 a.m. |

TRANSCRIPT OF REARRAIGNMENT
BEFORE THE HONORABLE DANNY C. REEVES

Appearances of Counsel:

On behalf of the United States:   JASON ALLEN DENNEY, ESQ.
Assistant U.S. Attorney
207 Grandview Drive
Suite 400
Ft. Mitchell, Kentucky  41017


On behalf of the Defendant:   KERRY L. NEFF, ESQ.
526 Greenup Street
Covington, Kentucky  41011


Court Reporter:   CYNTHIA A. OAKES, CRR
Official Court Reporter
United States District Court
560 Athens Boonesboro Road
Winchester, Kentucky  40391
(859) 983-4346


Proceedings recorded by mechanical stenography,
transcript produced by computer.

1          THE COURT:  Thank you.

2          Madam Clerk, if you could call the matter scheduled

3    for 11:30, please.

4          THE CLERK:  Covington Criminal 10-28, United States

5    v. Verlin Brett Bailey.

6          THE COURT:  Thank you.

7          If counsel could state their appearances, please.

8          Mr. Denney.

9          MR. DENNEY:  Jason Denney for the United States, Your

10   Honor.

11         THE COURT:  All right.  Thank you.

12         MR. NEFF:  Judge, good morning, Kerry Neff here with

13   Mr. Bailey, who is seated to my right.

14         THE COURT:  All right.  Thank you.

15         This matter is scheduled for rearraignment as to the

16   charge contained in Count One of the indictment.

17         Is Mr. Bailey prepared to proceed with rearraignment

18   at this time, Mr. Neff?

19         MR. NEFF:  Yes, we are, Judge.

20         THE COURT:  Thank you.

21         Madam Clerk, if you could please administer the oath

22   to Mr. Bailey to answer questions.

23         THE CLERK:  Yes, Your Honor.

24      (Whereupon, the Clerk administered the oath to the

25   defendant.)

1    THE COURT:  Would you state your full name, please?

2    THE DEFENDANT:  Verlin Brett Bailey.

3    THE COURT:  Mr. Bailey, as we begin this morning, let

4 me first advise you that, of course, you have been placed under

5 oath; and as a result, the answers that you give to the

6 questions I'll be asking you must be truthful.  I do need to

7 remind you that if you should fail to give truthful answers,

8 you could be prosecuted for perjury or making a false

9 statement.  And you do understand that?

10    THE DEFENDANT:  Yes, sir.

11    THE COURT:  The way we'll proceed is I'm going to ask

12 you several questions to confirm that you are competent or able

13 to enter a guilty plea in the case.  Next, I want to discuss

14 with you what you would be giving up by entering a plea of

15 guilty.  And then, finally, I would like to talk with you about

16 some of the factors that the Court would consider in imposing a

17 sentence in your case.  If at any time you feel that you don't

18 understand one of my questions, stop me and tell me that and

19 I'll either repeat or rephrase the question; otherwise, I'll

20 assume that you do understand what I'm asking.  Will you do

21 that?

22    THE DEFENDANT:  Yes, sir.

23    THE COURT:  The sound system doesn't always work as

24 well as we would like in this courtroom, so if I don't speak

25 loud enough, tell me that as well and I'll try to keep my voice

1   up and I'll ask you to do the same thing.

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  Well, let me begin by asking how old you

4   are.

5              THE DEFENDANT:  I'm 33.

6              THE COURT:  How much education do you have?

7              THE DEFENDANT:  I've got a GED.

8              THE COURT:  GED?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  When did you get your GED?

11             THE DEFENDANT:  I believe it was 2006.

12             THE COURT:  Okay.  What was the last year that you

13  attended school?

14             THE DEFENDANT:  Tenth grade.

15             THE COURT:  Tenth grade.  Where did you last go to

16  school?

17             THE DEFENDANT:  It was Gallatin County High School.

18             THE COURT:  Do you remember the calendar year that

19  you were in the tenth year approximately?

20             THE DEFENDANT:  '93 perhaps.

21             THE COURT:  So you were out of school for a number of

22  years before you were able to get your GED?

23             THE DEFENDANT:  Yes, sir.

24             THE COURT:  Did you get it on your first attempt or

25  did you try previously?

1          THE DEFENDANT:  First attempt.

2          THE COURT:  First attempt?  All right.  You are able

3  to read and write; correct?

4          THE DEFENDANT:  Absolutely.

5          THE COURT:  Are you currently receiving any medical

6  care or treatment for any mental health conditions?

7          THE DEFENDANT:  No, sir.

8          THE COURT:  Have you ever been treated or

9  hospitalized for any type of a mental illness or a mental

10 condition?

11         THE DEFENDANT:  No, sir, I haven't.

12         THE COURT:  Have you ever been treated or

13 hospitalized for addiction to either drugs or alcohol?

14         THE DEFENDANT:  No, sir.

15         THE COURT:  Have you ever been diagnosed as having

16 any type of a mental condition that could include anxiety or

17 depression?

18         THE DEFENDANT:  No, sir.

19         THE COURT:  Are you under the influence of any type

20 of drugs or alcohol at the present time?

21         THE DEFENDANT:  No, sir.

22         THE COURT:  I know you've been incarcerated for some

23 period of time.  Do you take any prescription medicines?

24         THE DEFENDANT:  No, sir.

25         THE COURT:  Were you taking any medications before

1   you were placed in custody?

2         THE DEFENDANT:  Not by prescription.  Not by doctor's

3   orders.

4         THE COURT:  All right.  Did you have regular

5   employment before you were arrested in this matter?

6         THE DEFENDANT:  Yes, I did.

7         THE COURT:  Tell me the kind of work that you've been

8   able to do in the past.

9         THE DEFENDANT:  Several different factory jobs;

10   landscaping, construction, just —— that sums it up.

11         THE COURT:  All right.  Let me ask Mr. Neff just a

12   couple of questions.

13         Mr. Neff, have you had any problems communicating

14   with Mr. Bailey in this matter?

15         MR. NEFF:  No, Your Honor, I have not.

16         THE COURT:  Do you have any reason to believe that he

17   doesn't understand the nature of the charges or that he is

18   impaired such that he could not proceed here today?

19         MR. NEFF:  I do not, Your Honor.  And as recently as

20   yesterday, we sat down and reviewed the revised draft plea

21   agreement and I'm comfortable he understands exactly what's

22   going on.  I don't have any question about his competence.

23         THE COURT:  All right.  Thank you.

24         Mr. Bailey, let me confirm that you have received a

25   copy of the indictment in the case.  Is that correct?

1           THE DEFENDANT:  Yes, sir.

2           THE COURT:  Have you had the opportunity to review

3   the indictment and discuss it with your attorney?

4           THE DEFENDANT:  Yes, sir, I have.

5           THE COURT:  Have you discussed not only the charges

6   against you but the case in general with Mr. Neff?

7           THE DEFENDANT:  Yes, sir.

8           THE COURT:  Are you satisfied with the advice and the

9   representation that he's given you in the case?

10          THE DEFENDANT:  Absolutely, sir.

11          THE COURT:  I have been given a written plea

12   agreement in the case, together with a sealed supplement.  The

13   plea agreement itself is a five-page document, and on the last

14   page it has the attorneys' signatures and it appears to have

15   your signature dated July 11th, which I believe was Sunday, if

16   I'm not mistaken.

17          MR. NEFF:  Judge, we actually -- that was yesterday

18   when we met.

19          THE COURT:  It was actually yesterday?

20          MR. NEFF:  It should be the 12th.

21          THE COURT:  All right.  Now, those same signatures

22   and dates appear on the supplement to the plea agreement as

23   well.

24          Now, let me first confirm that this is your signature

25   and that you signed this document -- this is the final version,

1  that you signed this document and the supplement yesterday as

2  your attorney has indicated; is that correct?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  So the date may just be a typographical

5  error or an error in putting the 11th when in fact it was the

6  12th that it was signed?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  All right.  Before signing these

9  documents, did you have a chance to read through each one?

10          THE DEFENDANT:  Yes, sir, I did.

11          THE COURT:  And did you discuss the documents to your

12  satisfaction with your attorney?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  And do you feel that you understand the

15  terms of your plea agreement and the supplement?

16          THE DEFENDANT:  Yes, sir.

17          THE COURT:  Is this the only agreement — and when I

18  say "agreement," I'm referring to both documents.  Is this the

19  only agreement that you have with the government in the case?

20          THE DEFENDANT:  Yes, sir.

21          THE COURT:  Now, in just a moment, I'm going to ask

22  Mr. Denney on behalf of the United States to review the

23  essential terms of the plea agreement, the key provisions.

24  It's not necessary that he go through this line by line, but he

25  is going to go through the major sections.  As he does that, I

1  would like for you to listen carefully, because when he's

2  finished I'm going to ask your attorney and then I'm going to

3  ask you if he's accurately summarized it.  So if you would,

4  listen as he does that.

5          All right.  Mr. Denney, could you review the

6  essential parts of the plea agreement with us?

7          MR. DENNEY:  Yes, Your Honor.  Paragraph one states

8  that pursuant to Rule 11(c) the defendant will plead guilty to

9  Count One of the indictment, which charges production of child

10  pornography in violation of 18 U.S.C. 2251(a).  The United

11  States will move at sentencing to dismiss Counts Two and Three.

12          Paragraph two recites the essential elements of the

13  offense.

14          Paragraph three sets forth the factual basis the

15  United States would prove beyond a reasonable doubt and the

16  defendant admits those facts are true.

17          Paragraph four recites the maximum statutory

18  punishment for the offense, which does include a minimum term

19  of imprisonment of 15 years.

20          In paragraph five the parties make several nonbinding

21  sentencing guideline recommendations, including the following:

22  The base offense level should be 32 increased by two because

23  the minor had not obtained the age of 16 years, increased by

24  two because the minor was otherwise in the custody, care, or

25  supervisory control of the defendant, but the defendant

1  reserves the right to argue against application of that
2  enhancement, and decreased by three for acceptance of
3  responsibility.
4          Paragraph three states that no agreement exists about
5  the defendant's criminal history category.
6          In paragraph seven the defendant agrees not to file a
7  motion for a decrease in the offense level based on a
8  mitigating role.
9          In paragraph eight, the defendant waives the right to
10 appeal and the right to collaterally attack the guilty plea and
11 conviction.
12         Paragraph nine makes clear that the defendant will
13 register at a sex offender as prescribed by law.
14         Paragraph ten sets forth possible consequences for
15 violating the agreement.
16         Paragraph 11 makes clear that this document and its
17 sealed supplement contain the complete and only plea agreement
18 between the United States and the defendant, and the United
19 States has made no other promises to the defendant.
20         Paragraph 12 states this agreement does not bind
21 other prosecuting authorities.
22         Lastly, in paragraph 13, the defendant and his
23 attorney acknowledge that the defendant understands the
24 agreement, that his attorney has fully explained it to him, and
25 that his entry into the agreement is voluntary.  And there is a

1  sealed supplement to this agreement.

2          THE COURT:  All right.  Mr. Denney, I think you might

3  have misspoken.  It's paragraph six in which the parties agree

4  or indicated that there is no agreement about the defendant's

5  criminal history, is that correct, as opposed to paragraph

6  three?

7          MR. DENNEY:  Yes, Your Honor, paragraph six states

8  there's no agreement about criminal history.

9          THE COURT:  All right.  And this is a nonbinding plea

10 agreement?

11         MR. DENNEY:  That's correct.

12         THE COURT:  All right.  Thank you.

13         Mr. Neff, with that one correction that I made in

14 reference to paragraph six, did Mr. Denney accuracy summarize

15 the essential terms of the plea agreement?

16         MR. NEFF:  Yes, he did.

17         THE COURT:  All right.  And I understand that while

18 the United States is making a recommendation as to certain

19 guideline calculations, the defendant is reserving the right to

20 argue against the application of one of those guideline

21 provisions 2G2.1(b)(5); is that correct?

22         MR. NEFF:  That is correct, Your Honor.

23         THE COURT:  And, of course, you understand that the

24 Court will have to make that determination at the time of the

25 sentencing hearing.

1          MR. NEFF:  Yes, we do.

2          THE COURT:  All right.  Thank you.

3          Mr. Bailey, were you able to hear Mr. Denney as he

4    was going through your plea agreement?

5          THE DEFENDANT:  Yes, sir.

6          THE COURT:  Did he accurately summarize it as you

7    understand it?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  Other than what's contained in the plea

10   agreement and the supplement, has anyone else made any promises

11   to you to induce you or to convince you to enter into the plea

12   agreement?

13         THE DEFENDANT:  No, sir.

14         THE COURT:  Has anyone made any threats or in any way

15   forced you to enter into the plea agreement?

16         THE DEFENDANT:  No, sir.

17         THE COURT:  Has anyone told you that you would

18   receive a specific sentence in exchange for entering a plea of

19   guilty in the case?

20         THE DEFENDANT:  No, sir.

21         THE COURT:  And do you understand that if I accept a

22   plea of guilty from you pursuant to your plea agreement, that

23   you would be adjudged guilty of the offense that's charged in

24   Count One and you would lose certain valuable civil rights that

25   you have, and that would include the right to vote, the right

1  to hold public office, the right to serve on a jury, and also

2  the right to possess a firearm or any type of a dangerous

3  weapon, and that would include ammunition?  And you do

4  understand that?

5            THE DEFENDANT:  Yes, sir, I do.

6            THE COURT:  The statutory penalty provisions are

7  accurately set forth in paragraph four of the plea agreement.

8  Let me take just a moment to go through those penalty

9  provisions.

10            The maximum statutory punishment for Count One would

11  be a term of imprisonment for not less than 15 years – in other

12  words, there's a mandatory minimum that would be applied in the

13  case – but not more than 30 years.  There's also a possibility

14  of a fine of not more than $250,000 and a term of supervised

15  release for not less than five years, but the Court could

16  impose supervised release for up to a period of life.  And

17  there's a special assessment of $100 that would be applied, and

18  pursuant to your plea agreement, that would be due at the time

19  of entry of your plea in the case.

20            Do you understand those are the maximum penalties

21  that could be imposed by law for what's being charged in Count

22  One?

23            THE DEFENDANT:  Yes, sir.

24            THE COURT:  Do you also understand that you could

25  receive additional penalties, including additional jail time,

1    if the terms of supervised release were to be violated?  You

2    understand that?

3              THE DEFENDANT:  Yes, sir.

4              THE COURT:  And the maximum period of incarceration

5    for a supervised release violation would be not more than five

6    years, but the Court could reimpose supervised release for any

7    term up to life if there were to be a violation.  You

8    understand that?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  In other words, if the Court were to

11   initially impose a term of supervision, let's say, of five

12   years and there were a violation of supervision, the Court

13   could reimpose supervised release for up to life; in other

14   words, the Court wouldn't be limited to the five years

15   originally imposed.  You understand that hypothetical?

16             THE DEFENDANT:  Yes, sir.

17             THE COURT:  All right.  Let me talk to you for just a

18   moment about the Sentencing Guidelines and how they may be

19   applied in your case.  First, let me tell you that the

20   Sentencing Guidelines are not binding on district courts, but

21   the Guidelines will be considered in determining the sentence,

22   and so it's important for you to understand generally how they

23   operate.

24             The Guidelines -- the Sentencing Guidelines are based

25   upon two primary factors.  First is the offense level for the

1  crime for which you've been charged, together with any

2  adjustments.  And the second factor is any criminal history

3  that you might have.  Those two factors taken together

4  determine what's called a guideline range.  Now, that can be

5  affected by any mandatory minimum that applies in the case, and

6  in this case the mandatory minimum would be a term of

7  incarceration of 15 years.

8          After the guideline range has been determined, you,

9  through your attorney, will have a chance to object to any of

10  those factors that go into calculating the sentencing

11  guidelines.  Your attorney will have that opportunity, as will

12  counsel for the United States.  It would be necessary for me to

13  resolve any objections before we could proceed with the

14  sentencing hearing.  In other words, if there were objections,

15  they wouldn't be presented to a jury, the Court would be

16  required to resolve those objections, and only then would we be

17  able to determine exactly what the guideline range would be.

18          Has all of that been explained to you by counsel?

19          THE DEFENDANT:  Yes, sir.

20          THE COURT:  All right.  Now, in certain

21  circumstances, the Guidelines allow for departures below a

22  guideline range, and there's also a statutory provision that in

23  some circumstances would allow the Court to consider a

24  departure below a mandatory minimum that's required by statute.

25  Have you discussed with your attorney the possibility or the

1  likelihood that those factors may be considered?

2                THE DEFENDANT:  Yes, sir.

3                THE COURT:  Now, do you understand that unless the

4  United States were to make a motion for a departure below the

5  statutory minimum in the case that the Court would not be

6  considering such a departure?  You understand that?

7                THE DEFENDANT:  Yes, sir.

8                THE COURT:  There are a number of other factors that

9  courts consider in imposing sentences and they're contained in

10  a statute, Title 18, Section 3553, and it provides that the

11  Court should consider the nature and the circumstances of the

12  offense, as well as the history and the characteristics of the

13  person that's to be sentenced.  The statute also provides that

14  the Court should consider the need for the sentence to reflect

15  the seriousness of the offense, the need to promote respect for

16  the law, and provide a just punishment for the offense.  The

17  Court will also consider the need to protect the public from

18  any future crimes of the defendant.  And the Court will

19  consider the issue of deterrence; in other words, would the

20  sentence that's imposed by the Court deter the defendant and

21  would it deter others from engaging in similar conduct.

22                Now, there's another factor that courts often

23  consider under the statute, and that is that the Court should

24  consider whether a particular defendant needs any type of

25  educational or vocational training, any medical care or

1   treatment, or treatment for any addictions that might be

2   present, such as an addiction to drugs or alcohol.

3           Now, those are just some of the factors that courts

4   can consider under the statute, but do you understand that

5   those are all matters that may be considered?

6           THE DEFENDANT:  Yes, sir.

7           THE COURT:  All right.  There is some waiver language

8   that's contained in your plea agreement.  It's not unusual to

9   have this language in a plea agreement, but anytime it's

10  present, of course, I do need to review it with you.  And I do

11  want to review paragraph seven and eight.

12          Paragraph seven provides that you agree that you

13  would not file a motion for a decrease in the offense level

14  based on what's called a mitigating role under the Sentencing

15  Guidelines, Section 3B1.2.

16          And then in paragraph eight you waive the right to

17  appeal and the right to collaterally attack the guilty plea and

18  conviction.

19          First, let me make sure you understand that you are

20  waiving though rights.  Correct?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  Now, with respect to paragraph eight

23  where you waive the right to appeal and to collaterally attack

24  the guilty plea and conviction, do you understand that when you

25  waive the right to collaterally attack something, that means

1  you're giving up the right to file a separate lawsuit to

2  challenge it or to file what's sometimes referred to as a

3  habeas petition or a habeas motion?  You understand that?

4          THE DEFENDANT:  Yes, sir.

5          THE COURT:  Do you also understand that you're not

6  waiving or giving up the right to appeal or collaterally attack

7  the sentence that's ultimately imposed in the case; in other

8  words, you're reserving that right, and you understand that?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  Now, do you also understand that to

11  challenge the sentence directly that there would be a time

12  limitation in which you could do that?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  All right.  We talked about the fact that

15  you would have the right to appeal your sentence to the United

16  States Court of Appeals for the Sixth Circuit, but do you

17  understand that you would not be able to withdraw from your

18  plea agreement if your attorney's prediction or your belief

19  about your guideline range were to be incorrect?  You

20  understand that?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  And if the Court were to consider one or

23  more of those statutory factors that we just talked about, that

24  would not be a reason to withdraw from your plea agreement.

25  You understand that?

1           THE DEFENDANT:  Yes, sir.

2           THE COURT:  If the sentence that's imposed in the

3   case is greater than you expect, while you could appeal the

4   sentence, you would not have a right to withdraw from your plea

5   agreement for that reason.  And you understand that?

6           THE DEFENDANT:  Yes, sir.

7           THE COURT:  And do you understand that if you are

8   sentenced to prison you would not be released on parole because

9   parole has been abolished in the federal system?  That's been

10  explained to you as well; correct?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  All right.  Well, there are a number of

13  rights that you have if this matter were to proceed to a trial

14  by jury.  However, by entering a plea of guilty at this time,

15  there would be no jury trial and so you would lose or give up

16  some of those rights, and let me go through those with you.

17          And, first, let me point out that you do have a right

18  to a speedy public trial.  Any verdict that would be returned

19  would have to be a unanimous decision of a jury composed of 12

20  people.

21          Now, the jury trial that was previously scheduled in

22  this case would not proceed if you enter a plea of guilty.  And

23  you understand that?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  Do you also understand that if you wanted

1  to do so you could continue with a plea of not guilty and

2  proceed to trial?  You do have that right if you wish to

3  exercise it, and you understand that?

4         THE DEFENDANT:  Yes, sir.

5         THE COURT:  Now, at any trial you would have a number

6  of rights.  First, of course, you would have the right to

7  assistance of counsel.  You have that right at all stages of

8  this proceeding and you don't lose that right by entering a

9  plea of guilty, but, of course, at trial you would have the

10  right of counsel.

11         At trial you would also have the right to have

12  subpoenas issued to compel witnesses to attend trial and

13  testify on your behalf.  You would also have the right of

14  confrontation, which means that you would have the right to

15  see, hear, and, through your attorney, cross-examine any

16  witnesses that might testify against you.

17         At trial you would have the right to remain silent.

18  While you could give up that right and testify, you could not

19  be forced to testify.  In fact, if you decided to remain silent

20  at trial, the United States couldn't comment on your silence

21  throughout the course of the proceeding.

22         At trial you would be presumed innocent of all

23  charges against you.  Therefore, before you could be convicted

24  on any charges, the United States would be required to prove

25  those charges to a jury beyond a reasonable doubt.

1          If I accept a plea of guilty from you pursuant to
2   your plea agreement, there would be no trial, as we've
3   discussed, and you would give up the rights as I've described.
4   Again, you understand that?

5          THE DEFENDANT:  Yes, sir, I do.

6          THE COURT:  What I would like to do at this point is
7   review Count One of the indictment with you, and after I've
8   gone through this charge, I'm going to ask you to tell me in
9   your own words what it was that you did to be guilty of the
10  charge.

11         Count One charges that on or about January 12th,
12  2010, in Boone and Kenton counties in the Eastern District of
13  Kentucky and elsewhere, that you did knowingly employ, use,
14  persuade, induce, entice, and coerce a minor to engage in
15  sexually explicit conduct for the purpose of producing a visual
16  depiction of such conduct using material that had been mailed,
17  shipped, and transported in and affecting interstate and
18  foreign commerce, all in violation of Title 18 of the United
19  States Code, Section 2251(a).  Mr. Bailey, can you tell me, in
20  your words, what it was that you did to be guilty of that
21  charge?

22         THE DEFENDANT:  I engaged in a text message
23  conversation with a minor and asked her for pictures and sent
24  her pictures over a cellular phone.

25         THE COURT:  All right.  Did you know at the time that

1  the person was 14 years of age?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  There is additional information that's

4  contained in the factual statement in paragraph three of your

5  plea agreement.  I know you've had a chance to review that with

6  your attorney.  Is the information that's contained in

7  paragraph three true and correct to the best of your knowledge

8  and belief?

9          THE DEFENDANT:  Yes, sir.

10          THE COURT:  At the time that you engaged in this

11  conversation by — Did you say it was a text message?

12          THE DEFENDANT:  Yes.

13          THE COURT:  And cellular telephone?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  Were there pictures exchanged as well?

16          THE DEFENDANT:  Yes, sir, there were.

17          THE COURT:  Did some or all of your actions take

18  place in Kenton County?

19          THE DEFENDANT:  It was Boone County, sir.

20          THE COURT:  Or in Boone County?

21          THE DEFENDANT:  Yes, sir.

22          THE COURT:  Which is in the Eastern District of

23  Kentucky?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  And did one or more of your actions take

1  place on or about the date charged, which is January 12th of

2  2010?

3           THE DEFENDANT:  Yes, sir.

4           THE COURT:  Is it your intention to enter a plea of

5  guilty to what has been charged in Count One because you are,

6  in fact, guilty of that conduct?

7           THE DEFENDANT:  Yes, sir.

8           THE COURT:  And do you understand that if this matter

9  were to proceed to trial the United States would be required to

10  prove the elements that are outlined in paragraph two of the

11  plea agreement?

12          THE DEFENDANT:  Yes, sir.

13          THE COURT:  And the elements for Count One would be

14  that the defendant employed, used, persuaded, induced, or

15  enticed the victim to engage in sexually explicit conduct for

16  the purpose of producing a visual depiction of such conduct,

17  the victim was under 18 years of age at the time, and the

18  depiction was produced using materials that had been mailed,

19  shipped, or transported in interstate commerce -- or the visual

20  depiction was actually transported in interstate commerce, you

21  understand those would be the elements?

22          THE DEFENDANT:  Yes, sir.

23          THE COURT:  All right.  Mr. Denney, in your opinion,

24  has a sufficient factual basis been stated for the Court to

25  accept a plea of guilty from Mr. Bailey to what has been

1  charged in Count One?

2       MR. DENNEY:  Yes, Your Honor.

3       THE COURT:  Mr. Neff, do you agree?

4       MR. NEFF:  I believe so, Your Honor.

5       THE COURT:  Mr. Bailey, let me ask you at this time,

6  how do you plead to Count One of the indictment?

7       THE DEFENDANT:  Guilty.

8       THE COURT:  Well, I am satisfied with the responses

9  that you have given me and I will make the following findings

10  in your case at this time:

11       It is the finding of this Court in the case of the

12  United States v. Verlin Brett Bailey that Mr. Bailey is fully

13  competent and capable of entering an informed plea; further,

14  his plea of guilty is a knowing and a voluntary plea which is

15  supported by an independent basis in fact containing the

16  essential elements of the offense that has been charged in

17  Count One.  His plea, therefore, will be accepted and he will

18  be adjudged guilty of the offense that has been charged in that

19  count.

20       The sentencing hearing in this matter will be

21  scheduled for here in Covington on October 25th at 11:00 a m.

22  Let me give the attorneys just a moment to check their

23  calendars on that date.

24       Mr. Denney, how does that look for you?

25       MR. DENNEY:  That's fine, Your Honor.

1          THE COURT:  Mr. Neff, is that open for you?

2          MR. NEFF:  That's fine, Judge.

3          THE COURT:  All right.  Mr. Bailey, let me go over a

4   couple of additional matters with you before we conclude this

5   hearing.  It will be necessary for you to meet with the

6   probation officer that's assigned to prepare your presentence

7   report.  You are entitled to have counsel present as you meet

8   with the probation officer.  And it's always good for you to

9   have your attorney present for these meetings, your attorney

10  may know some things that will need to be pointed out in your

11  favor that you may not think of or may not realize as being

12  important, when, in fact, they very well could be.  And you do

13  understand you can have counsel present; correct?

14          THE DEFENDANT:  Yes, sir.

15          THE COURT:  Next, we've gone over a number of matters

16  this afternoon.  It does appear to me that you've understood my

17  questions, but I want to make sure that's the case.  Is there

18  anything that I asked you that you felt like you just didn't

19  understand but you went ahead and answered anyway?

20          THE DEFENDANT:  No, sir.

21          THE COURT:  All right.  Do you have any questions for

22  me at this time?

23          THE DEFENDANT:  No, sir.

24          THE COURT:  All right.

25          Mr. Denney, are there any additional matters that

1    need to be taken up in this matter at this time?

2              MR. DENNEY:  No, Your Honor.

3              THE COURT:  Mr. Neff, are you aware of any matters?

4              MR. NEFF:  Nothing from us, Your Honor, no.

5              THE COURT:  All right.  Thank you.

6              Madam Clerk, let me provide you with the sentencing

7    order, the plea agreement, and the sealed supplement.

8              And, Mr. Bailey, it's my practice not to sign the

9    plea agreement until the time of the sentencing hearing, but

10   based on the information that you have provided, I would

11   anticipate signing and filing that into the record at the time

12   of the sentencing hearing.

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  All right.  Thank you, Counsel.  If

15   there's nothing else to be taken up in this case, this matter

16   will be in recess.

17             The 1:30 matter that was scheduled, the sentencing

18   hearing, Madam Clerk, I have delayed that to 2:00 based on

19   counsel's unavailability at 1:30, so that will be taken up at

20   2:00 this afternoon in the matter of Covington Criminal

21   No. 09-102.  We'll be in recess until that time.

22                       (Proceedings concluded at 11:58 a.m.)

23                  C E R T I F I C A T E

24       I, Cynthia A. Oakes, certify that the foregoing is a

25   correct transcript from the record of proceedings in the

1   above-entitled matter.

2

3   1/26/2011                          s/CYNTHIA A. OAKES
      DATE                             CYNTHIA A. OAKES, RPR, RMR, CRR
4