United States District Court
Eastern District of Kentucky
Northern Division at Covington

UNITED STATES OF AMERICA           )  Covington Criminal
                                   )  Action No. 10-28
    vs.                            )
                                   )  Covington, Kentucky
VERLIN BRETT BAILEY                )  October 25, 2010
                                   )  11:59 a.m.


TRANSCRIPT OF SENTENCING
BEFORE THE HONORABLE DANNY C. REEVES


Appearances of Counsel:

On behalf of the United States:   JASON ALLEN DENNEY, ESQ.
                                  Assistant U.S. Attorney
                                  207 Grandview Drive
                                  Suite 400
                                  Ft. Mitchell, Kentucky  41017


On behalf of the Defendant:       KERRY L. NEFF, ESQ.
                                  526 Greenup Street
                                  Covington, Kentucky  41011


Court Reporter:                   CYNTHIA A. OAKES, CRR
                                  Official Court Reporter
                                  United States District Court
                                  560 Athens Boonesboro Road
                                  Winchester, Kentucky  40391
                                  (859) 983-4346


Proceedings recorded by mechanical stenography,
transcript produced by computer.

1          THE COURT:  Thank you.

2          Madam Clerk, if you could call the matter scheduled

3     for 11:00, please.

4          THE CLERK:  Covington Criminal 10-28, United States

5     v. Verlin Brett Bailey.

6          THE COURT:  Thank you.

7          If counsel could state their appearances, please.

8          Mr. Denney.

9          MR. DENNEY:  Jason Denney for the United States, Your

10    Honor.

11         THE COURT:  Thank you.

12         Mr. Neff.

13         MR. NEFF:  Good morning, Judge, Kerry Neff here for

14    Mr. Bailey, seated to my right.

15         THE COURT:  Thank you.

16         This matter is scheduled for a sentencing hearing

17    this morning.  Before we proceed with the hearing, let me first

18    confirm that Mr. Bailey has received a copy of his presentence

19    report, that he's had the opportunity to review his report and

20    discuss it with his counsel.

21         Is that correct, Mr. Bailey?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  Mr. Bailey, your presentence report will

24    be placed in the file under seal.  It is available if you

25    should need it for any reason or if the attorneys should need

1    it, but it's not available to the general public.

2              And before we proceed, I will note for the record

3    that there is an objection to the guideline calculations,

4    specifically to the specific offense characteristic set forth

5    in paragraph 22 of the presentence report.  That's a two-level

6    increase under Section 2G2.1(b)(5).  That two-level increase is

7    appropriate if the Court determines that the minor that's

8    involved was otherwise in the care, custody, or supervisory

9    control of the defendant.

10             Mr. Neff, would you like to be heard on that

11   objection?

12             MR. NEFF:  Judge, if I could speak briefly to both my

13   objections just for a moment.  I had a meeting with Mr. Bailey

14   last week, and based on my conversations with him, I will rest

15   on the information presented to the Court in the memorandum and

16   the objections -- on both of my objections and present no

17   further argument today on either one of those.

18             THE COURT:  All right.  Thank you.

19             Mr. Denney, would you like to respond to the

20   objections?  The first objection relates to the guideline

21   provision that I've just referenced, and the second relates to

22   an argument under Eighth Amendment, cruel and unusual

23   punishment, arguing that the penalty in this particular case

24   would be in violation of the Eighth Amendment in light of the

25   underlying activity undertaken by the defendant.

1          MR. DENNEY:  Well, Judge, with respect to the

2    sentencing enhancement, I think the application note to that

3    guideline section makes clear that it's intended to have a

4    broad application and it even applies to relationships between

5    victims and teachers or daycare providers or baby-sitters, and

6    certainly if it's intended to have that broad application

7    applied to those people that it would apply to the defendant,

8    who was a longtime paramour of the victim's mother, lived with

9    the family for a period of time in a familial-type

10   relationship.  So I think it's clear just under the language of

11   the application note that that enhancement does apply to the

12   defendant.

13          THE COURT:  All right.

14          Mr. Denney, I assume you're familiar with my decision

15   in *United States v. Donald Martin*, a case from the London

16   Division of this Court involving a photographer who the Court

17   found was properly subject to the two-level enhancement because

18   he had custody or control of minors who he was photographing

19   during a significant portion of the day.  You're familiar with

20   that case?

21          MR. DENNEY:  Yes, Your Honor.

22          THE COURT:  All right.

23          Mr. Neff, are you familiar with the reference I just

24   made, the case?

25          MR. NEFF:  Judge, I am familiar with the case.

1      THE COURT:  All right.  In that particular case, the

2  Court held that –– first, that this particular section is

3  intended to have broad application, as the application notes

4  indicate.  More importantly, in this matter, this really is not

5  a close case under this particular section of the Guidelines.

6  This defendant was involved in a relationship with the victim's

7  mother first, he was actually living in the house with the

8  minor, and it's clear that he had close contact with this

9  particular minor over an extended period of time and would

10  certainly fit within the definition outlined in Section

11  2G2.1(b)(5), which includes a parent, relative, or legal

12  guardian of the minor or if the minor was otherwise in the

13  custody, care, or supervisory control of the defendant, which

14  is established in this particular case.  And as indicated in

15  the application notes, once again, this particular application

16  is intended to have broad application, that's Application

17  Note 3, and it includes offenses involving a minor entrusted to

18  the defendant, whether temporarily or permanently, and it does

19  include a broad class of individuals.  It does not depend upon

20  the legal status of the parties and their relationship.  The

21  Court finds that it does apply.

22      Further, considering the issue of whether the

23  potential penalty in the case, either the mandatory minimum

24  term that would be required or the guideline range in the case

25  would provide –– or would be a violation of the Eighth

1   Amendment, the Court, in this particular case, finds that it

2   does not.  The Sixth Circuit has addressed similar issues on

3   prior occasions and has concluded that such a penalty would not

4   give rise to an Eighth Amendment violation, and in particular,

5   this Court finds that this specific activity of the defendant

6   and the potential penalty would not give rise to an Eighth

7   Amendment violation looking at the underlying facts of the

8   case.  So, therefore, the objections raised to the guideline

9   calculations will be overruled for the reasons stated.

10          Now, I will call the parties' attention to the

11  guidelines and to the calculations.  Before I review the

12  calculations, I will remind counsel that if there are any

13  additional factors that you would like to call to my attention

14  that are relevant to sentencing under Title 18, Section 3553,

15  please do so during allocution in the case.

16          Also, if there are victim statements —— I have

17  received a number of letters, and I'll certainly consider all

18  that information, but if there are victims' statements, if the

19  United States would advise me of that during allocution, I'll

20  certainly hear from the victims in the matter.

21          Turning to the guideline calculations, calling the

22  parties' attention to the presentence report beginning at

23  paragraph 19, which indicates that the 2009 edition of the

24  Guidelines has been used in the case, the base offense level

25  for the offense charged is a base offense 32.  There is a

1  two-level increase based upon the minor victim being between

2  the ages of 12 and 16.  There's also the two-level increase

3  that I just reviewed under Section 2G2.1(b)(5), the Court

4  having found that the victim was in custody, care, or

5  supervisory control of the defendant at times relevant to the

6  action.  That results in an adjusted offense level of a level

7  36.

8          There is a three-level reduction shown for acceptance

9  of responsibility.  Under Section 3E1.1 of the Guidelines, it

10 does require a motion from the United States before the Court

11 can consider the third level for acceptance credit.

12          MR. DENNEY:  We do so move, Your Honor.

13          THE COURT:  I will sustain that motion and apply a

14 three-level reduction for acceptance of responsibility, and

15 that has the effect of reducing the total offense level to a

16 level 33.

17          Information concerning Mr. Bailey's criminal history

18 is contained in the report, and as set forth in paragraph 38 of

19 the report, he has 11 criminal history points, which would

20 place him in Criminal History Category V for sentencing

21 purposes.  And based upon those calculations, the guideline

22 range in the case would be a range of 210 to 262 months.  And

23 the Court has found that that would not be a violation of the

24 Eighth Amendment to impose a sentence at that range for the

25 underlying conduct.

1         Likewise, the fine range in the case would be a range

2 of 17,500 to $175,000 according to 5E1.2(c)(3).

3         And those are the relevant calculations that the

4 Court has adopted.

5         Now, Mr. Denney, are there any motions to be taken up

6 before we proceed with allocution?

7         MR. DENNEY:  Yes, Your Honor.  Consistent with the

8 plea agreement, the United States moves to dismiss Counts Two

9 and Three.

10         THE COURT:  All right.  Let's see, are there issues

11 of forfeiture for the Court to address in this matter?

12         MR. DENNEY:  I don't believe so, Judge.  We agreed in

13 the plea agreement that the defendant would forfeit all his

14 interest in the one cell phone that's listed in the forfeiture

15 allegation.

16         THE COURT:  All right.  Thank you.

17         The United States' motion will be sustained, and

18 those counts, other than the counts of conviction, which would

19 be Counts Two and Three, would be dismissed at this time as to

20 this defendant.

21         Also, I have signed the plea agreement.  It will be

22 filed in the record at the conclusion of the hearing.

23         Mr. Denney, I'm going to go a little bit out of my

24 usual order with respect to allocution.  In the event that

25 there are victims that wish to make a statement, rather than

1  hear from them last, I do want to hear from them at this time.

2  That will give the defendant an opportunity to respond if he

3  choses to do so.

4        MR. DENNEY:  Yes, Your Honor.  I understand that

5  there are family members of the victims present that would like

6  to be heard.

7        THE COURT:  All right.

8        MR. DENNEY:  The first one is the mother of the

9  victim, and her name is Cherokee Hubbard.

10        THE COURT:  All right.  Ms. Hubbard is present.

11        Ma'am, if you would please, come up to the podium,

12  and as you're coming up, what I will ask you to do is if you do

13  have comments to make, of course, you'll need address those to

14  me as opposed to any of the parties in the courtroom.  If you

15  have any materials you want me to review, of course, you'll

16  need to show those to me as well.  But I'll hear from you at

17  this time.  If you could please first state your name for the

18  record.

19        MS. HUBBARD:  Cherokee Hubbard.

20        THE COURT:  All right.  Yes, ma'am.

21        MS. HUBBARD:  Thank you for allowing me to speak and

22  hearing my words.  This is not Mr. Bailey's first time in

23  trouble with the law.  I would like to remind you Mr. Bailey

24  knew his victim, my daughter Anna, since she was four years

25  old.  Mr. Bailey victimized his own child's half sister.

1   Mr. Bailey knew exactly what he was doing, he preyed on my
2   daughter at her weakest moment, nine months after her father,
3   Joshua Ligon, had his accident and a mere six months after her
4   father, Joshua, passed away.

5           Joshua not only loved his own child, Anna, Joshua
6   loved Mr. Bailey's child, Ashley, like she was his.  Joshua
7   loved and helped me with both children because he wanted to.
8   In stark contrast, Mr. Bailey victimized Joshua's child because
9   he wanted to.  Had I not found the disgusting texts and later
10  the horrific pictures, Mr. Bailey would have taken both my
11  children, just like he had planned through text messages with
12  my daughter Anna, his victim.

13          One of the many thoughts that haunt me, what would
14  have happened had Mr. Bailey been able to take my children?
15  What would he have done with my daughters after victimizing
16  Anna completely?  Would he have moved on to his own child,
17  Ashley, would my children even be alive right now?  I will be
18  tortured for the rest of my life because of the terrible acts
19  Mr. Bailey committed.  I am the one that told my daughters to
20  trust him, to love him, and to respect him.  I failed to see
21  this coming, so in the end, I failed to protect my daughters.
22  I failed Joshua and I failed myself.  I will never forget what
23  happened, the text and horrible images will forever be burned
24  in my mind.  I think of Mr. Bailey's traumatizing actions every
25  day.

1          I am asking you to sentence Mr. Bailey to the

2    harshest punishment allowed by law.  Please see Mr. Bailey for

3    the child predator that he is and do not let him do this to

4    another family.

5          And I brought a picture.  It's of Anna when she was

6    nine, her father Joshua, and her little sister, Mr. Bailey's

7    daughter when she was about three.  And in the picture, it has

8    Anna on a motorcycle and her father holding it up and looking

9    at Mr. Bailey's child, and on his face, you see nothing but

10   love.  And that's how he felt for Mr. Bailey's child.  How dare

11   he do this to Josh's child.  Thank you.

12            THE COURT:  All right.  Thank you, ma'am.

13            Mr. Denney.

14            MR. DENNEY:  Judge, I believe there is one more

15   person that does wish to address the Court.

16            THE COURT:  Yes, sir.

17            MR. DENNEY:  Her name is Linda Nichols, she is the

18   victim's grandmother, and I would simply offer for explanation

19   that Ms. Nichols does wish to address the Court in person in

20   place of her son, who is now deceased.

21            THE COURT:  All right.  That would be fine.

22            And, ma'am, if you could state your name for the

23   record.

24            MS. NICHOLS:  My name is Linda Nichols.

25            THE COURT:  Yes, ma'am.

1                MS. NICHOLS:  I was Joshua's mother.  I'm still

2    Joshua's mother.  I can't tell you the pain that our family has

3    gone through in the last couple of years.  The man on trial now

4    promised my son when he was dying that he would look after Anna

5    for him.  Such betrayal.  I work with children, I'm an

6    educator, and I work with children that have been molested, and

7    they do not completely heal ever.  There are scars that run so

8    deep.  As Cherokee has asked, I am asking you to please not

9    take the chance of him hurting another family like he's hurt

10   ours.  Thank you.

11               THE COURT:  All right.  Thank you, ma'am.

12               All right.  Thank you.  Mr. Denney, any additional

13   statements from members of the victim's family?

14               MR. DENNEY:  No, Your Honor.

15               THE COURT:  All right.  Thank you.

16               Mr. Neff, at this time, we'll proceed with

17   allocution.  I'll hear from you and also from Mr. Bailey if he

18   would like to address the Court.

19               MR. NEFF:  Thank you, Judge.  Would you like us to

20   come to the podium?

21               THE COURT:  Counsel table is fine.

22               MR. NEFF:  Thank you, Your Honor.

23               Judge, as I indicated earlier, there were certain

24   objections that we made to the presentence report.  We are

25   choosing not to argue them any further here today and we are

1   just going to submit and rely on the briefs.  The Court has

2   made a finding on both of those issues.  And the Court has also

3   granted the government's motion for the third point for

4   acceptance of responsibility.  That's — I'm going to be very

5   brief here, I believe.  That's where I'm going to start at.

6          That's one thing that struck me maybe and maybe shock

7   me from the beginning of this case, was Mr. Bailey's acceptance

8   of his responsibility for the conduct that he engaged in even

9   after knowing the severity of the penalties.  I have

10  represented and do and will represent people who are looking at

11  much less severe penalties for their conduct, and I normally

12  expect a certain reaction from people, and sometimes it's

13  kicking and screaming and fighting, sometimes it's a legitimate

14  defense.  But when looking at the conduct here and the

15  associated penalties, I expected a certain reaction from my

16  client and I didn't get it.  In a sense, I say that, probably

17  the wrong word to use, but it's an honorable trait I think he

18  has, he made a mistake, he admitted it, he understands what the

19  penalty is going to be and he's accepting that.

20         Now, we may disagree, not with the Court, not with

21  the prosecutor, not with the facts of this case, we may

22  disagree with Congress on the type of penalty associated with

23  this, but he understands that the Court is going to follow the

24  law.  And even understanding that, he accepted his

25  responsibility and has, obviously, entered a guilty plea in

1  this case.  He's not said a bad word about anybody in this case

2  to me or anyone.  It amazed me in my conversations with me, it

3  amazed me in his interview with the probation officer how

4  bluntly he accepted his responsibility and knew he screwed up,

5  he made a mistake, and it was a big mistake.  And probably, if

6  you stopped ten people on the street and asked them, what do

7  you think would happen to you if you did this, probably none of

8  them, maybe one, would understand the severity of the penalties

9  associated with this.  I'm not demeaning the seriousness of the

10 crime, I'm not demeaning the seriousness of the impact on

11 people, victims, families on both sides, it's just it's new,

12 it's not understood, and unfortunately it's something that's

13 probably been done for a long time and now is bubbling to the

14 surface as far as that type of contact.

15        On the same line, Judge, Mr. Bailey has expressed to

16 me personally, I know that he expressed in his interview with

17 the probation officer, his remorse for the conduct.  I asked

18 him, I said, you know, I bet if you could turn the clock back

19 in time and if you would do this again, and his answer

20 obviously was, no, I wouldn't do it again, first of all,

21 because he now knows the penalty that's attached to certain

22 conduct, but also he has indicated in his interview with the

23 probation officer he was under the influence of drugs and

24 alcohol at the time.  He has a drug problem and he's going to

25 ask the Court to give him whatever assistance the Court can

1  give him while he's incarcerated.

2        On his behalf, Judge, I have made the argument that

3  the penalty is excessive.  This is a situation that I can see

4  from every angle, from 360 degrees, as a defense attorney, as a

5  father, as a citizen, and I may disagree or agree with the type

6  of penalties, but it's a position we have to take in this case.

7        The only thing I didn't put in my sentencing

8  memorandum, Judge, that I want to mention today, and I don't

9  know if it's an oversight on my part or just it didn't seem

10 important at the time, when I look at Brett's criminal history,

11 he's a Category V, and I represent people who are Category I,

12 some are Category VI.  He's a Category V, and the reason being

13 the number of points he received for a prior conviction and

14 then there was a two-point addition because this offense

15 occurred within two years of his release from prison.  Judge,

16 I'm asking you to take a look at the criminal history and

17 you'll notice it's all related to child support.  There's an

18 escape charge that was also related to child support.  He was

19 in a work camp and didn't return at the scheduled time.  He

20 eventually turned himself in, just as he did in this case.

21        And I neglected to tell you that when he was notified

22 in this case that there was a warrant for his arrest, he

23 surrendered himself to the police, so he began his acceptance

24 immediately upon notification that this was pending.

25        Judge, getting back to his criminal history, it's

1    all — if it wasn't for child support problems, I don't think

2    he would have any criminal points at all, it might be a

3    misdemeanor or two.  But he's fallen into — and it's his

4    responsibility to pay child support, he understands that, and I

5    assume he was doing the best that he could.  But many

6    individuals, when they end up with a child support conviction,

7    flagrant amount of support, it starts a vicious circle, a

8    downward cycle, he can't find jobs that he needs to find, they

9    get behind in their child support.  Once they're incarcerated

10   for that, it becomes even worse, it gets harder to find a job,

11   they develop a higher arrearage, they keep falling behind in

12   child support.  So it's a vicious downward spiral.  But for

13   that spiral, his criminal history would be minimal.

14          So I don't think I'm asking — I'm not asking the

15   Court to find that his criminal history overrepresents the

16   category, but I do want the Court to understand if you haven't

17   already looked at it, which I believe you probably have, that

18   that's the type of criminal history we have here.  This is not

19   someone who's out violating the law for 30 — he turned 34

20   Friday, he had a birthday Friday, so he's 34 years old now.  He

21   has not been a criminal all his life.  He made one major

22   mistake here and he's accepted the responsibility.  He knows

23   he's facing a lengthy prison sentence.  We have discussed,

24   under the guidelines, the very best I could ask the Court to do

25   today is the minimum mandatory of 15 years.  His guidelines are

1  above that.

2        We appreciate the position that the U.S. Attorney has

3  taken in that sentencing memorandum and, hopefully, the Court

4  will see it the same way.  My position as an advocate for

5  Mr. Bailey is that I think 15 years would be sufficient under

6  the law to punish him, to protect the public, and also provide

7  him with any rehabilitative type of services, drug treatment,

8  whatever else is available while he is incarcerated.  So we're

9  going to ask the Court to find that 15 years is sufficient.  We

10  understand the nature of the case and the Court's position.

11  And I will rest with that.

12        THE COURT:  All right.  Thank you.  Of course, if

13  Mr. Bailey would like to address the Court, he may do so.

14        THE DEFENDANT:  I think he pretty much covered

15  everything.

16        THE COURT:  All right.  Thank you.

17        Mr. Denney.

18        MR. DENNEY:  Well, Judge, the United States will

19  reaffirm all its arguments made in its sentencing memorandum

20  filed as Document 24 in the record.  I would only point out a

21  couple of things under 3553(a).  First, I don't think that I

22  have to speak much about the seriousness of this offense.  The

23  production of child pornography is a horrific crime that

24  creates a permanent visual record of child abuse.  That

25  permanent record can haunt victims for years if not for life,

1    and I think this Court well understands that.

2         I also think that it's important to think about the

3    mandatory minimum punishment in this case and why some may be

4    uncomfortable with it, and that's I think because there's a new

5    way to commit this crime and that's using cell phones, camera

6    phones, and wireless data transmission that certainly makes the

7    crime easier to commit than it has been in years previous.  But

8    I would submit that certainly doesn't make it any less serious,

9    it is still production of child pornography, it still results

10   in a permanent record of child abuse and permanent harm to the

11   victims as the Court has heard today.  I think, if anything,

12   the easier it is, the more severely it ought to be punished to

13   give general deterrence to that kind of crime.

14        Secondly, I would like to point out that because of

15   the 180-month minimum term of imprisonment, the United States

16   is recommending more than that for a couple of reasons.  One is

17   the defendant's position of trust that he violated with respect

18   to this victim.  After having lived in a familial relationship

19   with the victim and having taken advantage of that, I think the

20   guidelines take that into account, and it certainly should

21   account for more than the 180-month sentence the defendant

22   would have received if that position of trust had not been

23   violated.

24        Secondly, I think his criminal history should be

25   taken into account.  While it does represent a lot of child

1   support problems in his past, I don't think that's necessarily

2   a reason to discount the importance of the criminal history.

3   But at the same time, I do believe that criminal history is a

4   bit inflated because of the two points that are added because

5   of the length of time that had expired between service of the

6   previous sentence and the instant conduct.  I think this

7   defendant has also expressed extreme remorse and has accepted

8   responsibility virtually from the time of the arraignment, and

9   I think those two factors account for the United States'

10  recommendation of 200 months.

11          THE COURT:  All right.  Thank you, Mr. Denney.

12          Well, I do want to comment on a number of factors

13  that are relevant in this particular case in explaining the

14  sentence that would be imposed.  Even if the Court were to

15  credit the United States' position with respect to criminal

16  history, that it's a, quote, bit overstated with the two points

17  that were added, he would still be in a range of 188 to 235

18  months.  With nine criminal history points, that would place

19  him in Criminal History Category IV at offense level 33, that's

20  188 to 235, so it's still — it still reflects a very high

21  sentencing range for good reason; a very good reason.

22          It's clear to the Court in looking at the nature and

23  the circumstances of the offense what was occurring in this

24  case was what's typically referred to as "grooming."  This

25  defendant was attempting to take advantage of a 14-year-old

1  child, and that's never appropriate under any circumstances,

2  regardless of whether the excuse is drugs, alcohol, money.

3  Whatever the excuse may be, it is never appropriate.  It's

4  never appropriate to blame the system, as could be inferred

5  from some of the letters that were submitted on behalf of the

6  defendant.  The system did not do this to the defendant,

7  alcohol and drugs did not do this to the defendant, the

8  defendant did this to the defendant, pure and simple.  It's not

9  hanging with the wrong crowd as a youth, as at least one of the

10  letters would indicate.  Oftentimes when that argument is made

11  to the Court that he just got involved with the wrong crowd,

12  the clear and simple answer is he was the wrong crowd.  So

13  friends, parents, relatives should be aware that the Court does

14  not accept those reasons as excuses for conduct, especially

15  conduct such as this that has occurred in the particular case.

16          And perhaps this Court considers this offense even

17  more serious than the United States Attorney does in this

18  matter.  The Congress felt that it was necessary to impose

19  mandatory minimums for offenses such as this, and while courts

20  sometimes disagree with Congress, this Court does not disagree

21  with Congress over this particular type of an offense.  It's a

22  very serious offense when you damage, sometimes for life,

23  children.  When you take advantage of children and you damage

24  them psychologically, it's a very serious offense, and it's one

25  that deserves very serious punishment.  The Court finds

1  absolutely no Eighth Amendment violation in the type of

2  punishment that's imposed for these particular offenses.

3  Looking at the nature and the circumstances of the offense,

4  it's one of the most serious that can be committed.

5          This defendant, looking at his history, much of his

6  criminal history is related to failure to pay child support.

7  But that's an offense, that's a crime that he's committed, and

8  points are properly assessed for each of those offenses.  The

9  Court does not find any overstatement of the defendant's

10  criminal history in any way whatsoever.

11          Looking at other factors that are relevant, issue of

12  deterrence, this defendant is 34 years old.  If the Court were

13  to impose the mandatory minimum sentence, 15 years with good

14  time credit given and time being given for drug treatment, he

15  would be in his mid 40s when he was released from custody, and

16  that would not be sufficient punishment, in my opinion, for the

17  type of offense that has been committed here for this defendant

18  and would not provide sufficient deterrence to him but, more

19  importantly, would not provide sufficient deterrence generally

20  and would not provide sufficient protection to the public.

21          Of course, the Court looks at those factors, as well

22  as the issue of the need to avoid unwarranted sentencing

23  disparities among defendants with similar records who have been

24  found guilty of similar conduct, and the Court believes it

25  would be appropriate, even considering that factor, to impose a

1  sentence within the guideline range in this particular case.
2  The Court is not inclined, not inclined, to vary from the
3  guideline range in this matter.  Even upon the recommendation
4  of the United States, which is a recommendation of 200 months,
5  the Court believes that that would be inappropriate to do so in
6  this particular case under the facts that are presented.

7         I've certainly considered the statements that have
8  been made by members of the victim's family, and I will
9  certainly take those statements into account, as well as the
10 other statements that were submitted in writing, both by
11 members of the family, as well as members of the defendant's
12 family in support of his position.

13        With respect to other issues that have been raised in
14 this matter, again, the Court does not believe it's appropriate
15 to fall back on drug or alcohol use in an attempt to excuse the
16 type of criminal behavior that's been committed here.  And we
17 can call this whatever may be the politically correct name for
18 it, sexting, texting, whatever it may be, but quite frankly,
19 it's child abuse of a 14-year-old, and it's not acceptable to
20 this Court.

21        Therefore, the Court believes that for all those
22 reasons stated that a sentence of 220 months is the appropriate
23 term of incarceration in this particular matter.  The Court
24 believes that any term less than that would be insufficient
25 under the facts that are presented in this case, and therefore

1  I will announce the following sentence:

2          It will be the sentence of this Court, pursuant to

3  the Sentencing Reform Act of 1984, as modified by the decisions

4  in *Booker* and *Fanfan*, and I do believe that the following

5  sentence is sufficient but not greater than necessary to comply

6  with the purposes of Title 18, Section 3553(a)(2).

7          Accordingly, it will be the judgment of this Court

8  that the defendant, Verlin Bailey, will be committed to the

9  custody of the Bureau of Prisons for a term of 220 months.  It

10  will be recommended that he participate in any and all

11  vocational training and substance abuse treatment while he is

12  incarcerated.

13          Upon release from imprisonment, he will be placed on

14  supervised release for the remainder of his natural life.  And

15  within 72 hours of release from the custody of the Bureau of

16  Prisons, he shall report in person to the probation office in

17  the district in which he is released.

18          While on supervised release, he shall not commit

19  another federal, state, or local crime, shall comply with the

20  standard conditions that have been adopted by this Court, as

21  well as the following additional conditions:

22          He shall not possess a firearm, destructive device,

23  ammunition, or dangerous weapon;

24          He shall submit to one drug test within 15 days of

25  release from imprisonment and at least two periodic drug tests

1  thereafter.

2          I will also impose the following special conditions:

3          First, he shall participate in a program for

4  treatment of mental health and sexual disorders and shall

5  undergo a sexual offender risk assessment, psychosexual

6  evaluation, or other evaluations as needed and be subject to

7  periodic polygraph examinations at the discretion and at the

8  direction of the probation office;

9          He shall follow the rules and regulations of sex

10 offender treatment programs as implemented by the Probation

11 Office.

12         The Court will impose a restriction on use of

13 alcohol.  The defendant shall not consume any alcoholic

14 beverages.

15         There will be a residence restriction.  His residence

16 and employment must be preapproved by the Probation Office in

17 compliance with state and local law.

18         There'll be a restriction on contact with minors.

19 The defendant may not frequent, volunteer, or work at places

20 where children under the age of 18 congregate, and that would

21 include playgrounds, parks, daycare centers, public swimming

22 pools, youth centers, video arcade facilities and the like,

23 unless that is approved by the Probation Office in advance.

24         And he shall have no contact with the victims in this

25 matter.  That will include not only the minor victim, but the

1 individuals that have spoken here on behalf of the minor
2 victim.

3        The defendant shall not associate or have verbal,
4 written, telephonic, or electronic communication with any
5 person under the age of 18 without the permission of the United
6 States Probation Office.  This does not encompass persons under
7 the age of 18 such as ticket vendors, cashiers, waiters and
8 waitresses who the defendant must deal in order to obtain usual
9 commercial services.

10        There will be a restriction on materials.  He shall
11 not possess, view, listen to, or go to any locations where any
12 form of pornography, sexually stimulating performances, or
13 sexually oriented materials, items, or services are available.

14        He shall not possess or use a device capable of
15 creating pictures or video.

16        He shall not rent or use a post office box or storage
17 facility.

18        And he shall be required to register as a sex
19 offender as prescribed by law.

20        The Court will also impose the standard restrictions
21 on computer usage by those convicted of sex crimes such as this
22 one; that is, the defendant shall not possess or use a computer
23 or any device with access to any online computer service at any
24 location, including place of employment, without the prior
25 written approval of the probation officer, and this includes

1   any Internet service provider, bulletin board system, or other

2   public or private network or e-mail system.

3           The defendant shall consent to the United States

4   Probation Office conducting unannounced examinations of his

5   computer system and the internal or external storage devices,

6   which would include retrieval and copying of all memory from

7   hardware and software and the removal of such systems for the

8   purpose of conducting a more thorough inspection.  He will be

9   required to consent to having installed on his computer any

10  hardware or software to monitor his computer usage or to

11  prevent access to particular materials, and he will be required

12  to consent to periodic inspection of any such installed

13  hardware and software to ensure that it is functioning

14  properly.

15          He shall also be required to provide the Probation

16  Office with adequate information about his entire computer

17  system.  That includes the hardware and software and any

18  internal or external storage devices and all passwords used by

19  him, and he will be required to abide by all rules of the

20  computer restrictions and monitoring program.

21          The defendant shall be required to submit his person,

22  residence, office, vehicle, or property, any property under his

23  control, to a search conducted by the Probation Office at a

24  reasonable time and in a reasonable manner based upon

25  reasonable suspicion of contraband or evidence of a violation

1   of a condition of release.  Failure to submit to a search may

2   be grounds for revocation of supervision.  The defendant shall

3   be required to inform any other residents that the premises may

4   be subject to a search pursuant to this condition.

5           Finally, the defendant will be required to provide

6   the Probation Office with access to any requested financial

7   information.

8           With respect to issues of financial condition, based

9   upon information provided, the Court believes that this

10  defendant does not have the ability to pay a fine and,

11  therefore, the fine requirement will be waived.  However, he

12  will be required to pay the special assessment of $100, which

13  will be due immediately.

14          With respect to right of appeal, I will ask the Clerk

15  to advise the defendant in just a moment of his right to appeal

16  the sentence imposed in the case.  I do note for the record

17  that the defendant waived his right to appeal or to

18  collaterally attack the guilty plea and conviction through

19  paragraph eight of his plea agreement, but he's not waived the

20  right to appeal his sentence.

21          Before I do that, let me ask the attorneys if there

22  is any objection to the sentence imposed, if there is any

23  objection to any of these proceedings under *United States v.*

24  *Bostic*?  Of course, any objections not previously raised would

25  need to be raised at this time to be properly preserved for

1    appeal purposes.  And then, finally, let me ask if either side

2    would like the Court to make any additional findings to support

3    the sentence that has been imposed.

4            Mr. Denney.

5            MR. DENNEY:  No objections and no further findings,

6    Your Honor.

7            THE COURT:  Thank you.

8            MR. NEFF:  Judge, no objections that were not

9    previously raised, and we request no additional findings.

10           THE COURT:  All right.  Thank you.

11           Madam Clerk, if you could please advise Mr. Bailey of

12   his right to appeal.

13           THE CLERK:  You are notified by this Court that you

14   have a right to appeal your case to the Sixth Circuit Court of

15   Appeals, which on proper appeal will review your sentence and

16   determine whether it was imposed in violation of applicable

17   law.

18           If you are unable to pay for the cost of the appeal,

19   you have a right to apply for leave to appeal in forma

20   pauperis, which means you may appeal without paying for it.

21   The notice of appeal must be filed in this court within 14 days

22   from the date of entry of the judgment.

23           If you are without the services of an attorney and

24   desire to appeal, upon request, the Clerk of the Court shall

25   prepare and file forthwith a notice of appeal on your behalf.

1          If you do not have sufficient funds to employ counsel

2    for appeal proceedings, upon proper application to the United

3    States Court of Appeals for the Sixth Circuit, an attorney will

4    be appointed to prosecute the appeal for you.

5          You may request to be released on a reasonable bond

6    pending the appeal.

7          THE COURT:  Thank you.

8          And, Mr. Bailey, you will be handed in just a moment

9    what was just read.  If you would, please take a moment to

10   review that with your attorney.  After you've done so, please

11   sign the original indicating that you do understand your rights

12   of appeal.  There's one copy that you can keep for your

13   records.

14         Madam Clerk, let me provide you with the plea

15   agreement.

16         MR. NEFF:  Judge, we did discuss his right to appeal

17   earlier and he has signed it.

18         THE COURT:  All right.  Thank you, Mr. Neff.

19         All right.  Are there any additional matters that

20   need to be taken up in this case?

21         MR. DENNEY:  No, Your Honor.

22         THE COURT:  Thank you.

23         Mr. Neff?

24         MR. NEFF:  Nothing from us, Judge.

25         THE COURT:  Mr. Neff, you were appointed to represent

1    Mr. Bailey pursuant to the provisions of the Criminal Justice

2    Act.  I know these cases are always difficult to handle, but

3    the Court appreciates your willingness to continue to handle

4    these matters.  And I understand Mr. Bailey does as well.

5              MR. NEFF:  You're welcome.  Thank you.

6              THE COURT:  If there's nothing else to take up, Madam

7    Clerk, I believe our next hearing is at 2:00.

8              THE CLERK:  Yes, sir.

9              THE COURT:  We'll be in recess until that time.

10                      (Proceedings concluded at 11:40 a.m.)

11                   C E R T I F I C A T E

12        I, Cynthia A. Oakes, certify that the foregoing is a

13   correct transcript from the record of proceedings in the

14   above-entitled matter.

15

16   1/26/2011                    s/CYNTHIA A. OAKES
      DATE                        CYNTHIA A. OAKES, RPR, RMR, CRR
17

18

19

20

21

22

23

24

25